# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MENDOZA,<br><br>  Plaintiff,<br><br>  v.<br><br>GOLDEN VALLEY HEALTH CENTERS, et al.,<br><br>  Defendants. | Case No. 1:16-cv-01611-DAD-SAB<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

On October 26, 2016, Plaintiff Francisco Mendoza filed this action alleging that Defendants Golden Valley Health Center ("GVHC"), CEO Tony Weber ("Defendant Weber"), Human Resources Officer Michael Buda ("Defendant Buda"), Code Compliance Officer Arden Bennett ("Defendant Bennett"), Human Resources Director Roman Noriega ("Defendant Noriega"), Director of Facilities Scott Penner ("Defendant Penner"), Denise Ybarra Perez ("Defendant Perez"), and Patsy Leyva ("Defendant Leyva") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and relevant state law.

## I.

## SCREENING REQUIREMENT

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted. In

determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff was hired in maintenance at Golden Valley Health Center in March 2013. (Compl. 8,[1] ECF No. 1 at 8.)  Plaintiff alleges that on or about August 2013, he was subjected to offensive comments, including "those Latinos should be happy they even had a job" and "Latinos bring cockroaches to work from home."  (Id.)  Plaintiff reported these issues to management and Defendant Noriega, but no action was taken.  (Id.)  Plaintiff alleges that because he is a male he had harder work assignments, he was asked to work on days off, and he was heavily scrutinized under false pretexts of theft.  (Id.)  Plaintiff reported these differences to management and human resources, but no action was taken.  (Id.)

On or about March 4, 2014, Plaintiff made attempts to have his complaints addressed by Defendant Bennett.  (Id. at 10.)  Plaintiff contends that there was not enough time for Defendant Bennett to hear all of Plaintiff's concerns and Plaintiff advised Defendant Bennett that he had

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

more concerns. (Id.) On March 19, 2014, Defendant Bennett sent Plaintiff an email which stated that all of Plaintiff's concerns had been addressed. (Id.) On or about May 21, 2014, Plaintiff responded to Defendant Bennett and copied Defendant Weber and GVHC board members, explaining that he still had more claims of discrimination, retaliation, and/or illegal conduct. (Id.) Plaintiff did not receive a response. (Id.) On or about May 29, 2014, Plaintiff forwarded his email to Defendant Weber to Chief Medical Officer Dr. Silvia Diego. (Id.) After Dr. Diego informed Defendant Weber that Plaintiff's concerns were not addressed, Defendant Weber said that "right or wrong, the original complaints were dealt with and action was taken" and that he did not "like the approach that they (mainly Francisco [sic] is taking by writing to the board." (Id.)

On or about June 20, 2014, Defendant Weber agreed to meet with Plaintiff and Frank Zamarripa, who had been requesting to meet with Defendant Weber per the company's open door policy. (Id.) On or about June 20, 2014, Plaintiff sent Defendant Weber an email requesting to have the meeting postponed because he and Mr. Zamarripa wanted to have union representation. (Id.) The meeting was canceled so that they could make appropriate arrangements for union representation. (Id.) However, in the next day or two, Defendant Weber told Mr. Zamarripa "you guys blew it Frank, you blew your chance Frank" and "you need to tell Francisco that he has no business writing emails to the board, he is maintenance and all he needs to worry about is maintenance." (Id.) Mr. Zamarripa was distraught and told Plaintiff the message the next morning. (Id.)

On or about June 24, 2014, Plaintiff was told to drop what he was working on and he was escorted to the office of Defendant Buda. (Id.) Defendant Buda told Plaintiff that the Board of Directors wanted to separate with Plaintiff because they felt they had addressed Plaintiff's concerns and because Plaintiff was unhappy. (Id.) Plaintiff requested union representation multiple times, but Defendant Buda, who stated he had been directed by Defendant Weber, denied Plaintiff union representation and stated "you have no rights." (Id.) Defendant Buda told Plaintiff that the Board of Directors had conducted an investigation, that he was not going to hear Plaintiff's complaints, and that Plaintiff would need to hire a lawyer if he wanted to address his

1  complaints. (Id. at 10-11.)

2  When Plaintiff made repeated requests for union representation, Defendant Buda started
3  to yell at Plaintiff. (Id. at 11.) Defendant Buda stated that he felt he was being honest about
4  what he was doing and he felt he was doing it with respect. (Id.) Defendant Buda claimed that
5  Plaintiff was voluntarily resigning and told Plaintiff that he was to sign the paper and that there
6  was nothing he could do about it. (Id.) Defendant Buda told Plaintiff that Plaintiff could try to
7  talk to the Board of Directors, but Plaintiff had to leave because he was not going to give
8  Plaintiff his job back. (Id.) Plaintiff stated that he was not voluntarily resigning and that he was
9  not leaving, so Defendant Buda had Plaintiff escorted off the premises. (Id.)

10  Serve Employees International Union Local 521 ("Union") submitted requests for an *en*
11  *banc* hearing before the entire Board of Directors, but the requests were denied without
12  explanation. (Id.) When the Union made attempts to be placed on the Board of Director's
13  agenda, those meetings were cancelled or held at one of the member's homes. (Id.)

14  On or about January 2, 2015, Plaintiff received a letter dated January 2, 2015, from
15  George Conklin, a physician assistant, informing Plaintiff that GVHC would no longer serve as
16  Plaintiff's medical provider. (Id.)

17  Plaintiff alleges that on or about January 6, 2015, Defendant Leyva and Defendant
18  Ybarra committed perjury by swearing under oath affidavits that were used as material for an
19  injunction against Plaintiff prohibiting his ability to confront his accusers and in conflict with the
20  official Merced Police Department Incident Report #2014-00060384. (Id.)

21  On or about January 15, 2015, Plaintiff was served with a temporary restraining order by
22  private investigator Steve Hummel, who told Plaintiff that he was being directed by and
23  reporting only to the Board of Directors. (Id.)

24  Plaintiff asserts that on or about January 27, 2015, Defendant Leyva, Defendant Ybarra,
25  and other GVHC employees made false pretexts of threats, false and misleading statements,
26  unjustified negative references, and unfounded libelous statements against or about Plaintiff.
27  (Id.)

28  On or about February 15, 2014, Plaintiff was served with a permanent restraining order

by retired US Marshal David Hibert. (Id.) Mr. Hibert told Plaintiff that he and Mr. Hummel had been directed by the Board of Directors. (Id.)

Plaintiff alleges that from August 1, 2013, through present he has been subjected to unequal terms and conditions of his employment, retaliation, and ultimately, termination in violation of Title VII and he is seeking injunctive relief. Plaintiff seeks the removal of the restraining order so that he will be allowed to see his family doctor, see his family dentist, visit one of his best friends and mentor, Mr. Zamarripa, at his home on GVHC property, and participate in the South Merced Community group meetings that he used to help facilitate. (Id. at 7.)

## III.

## DISCUSSION

Plaintiff brings this action alleging discrimination based on sex and national origin. The complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); it need only contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002). The Court considers three theories: disparate treatment, hostile work environment, and retaliation.

### A. Disparate Treatment

Section 2000e-2 provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). This section makes it a violation of federal law for an employer to engage in disparate treatment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Disparate treatment occurs when a particular person is treated less favorably than others by an employer because of a protected trait. Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012).

To state a claim for disparate treatment by discrimination, a plaintiff must establish that

1) he belongs to a protected class; 2) he was qualified for his position; 3) he was subject to an adverse employment action; and 4) similarly situated individuals outside of his class were treated more favorably. Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). A disparate treatment claim requires the plaintiff to prove that the employer acted with a discriminatory intent or motive in taking the adverse employment action. Ricci v. DeStefano, 557 U.S. 557, 578 (2009); Wood, 678 F.3d at 1081. This requires the plaintiff to prove that the employer acted with a conscious intent to discriminate. Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002).

Plaintiff claims that around August 2013, he was subjected to offensive comments, including "those Latinos should be happy they even had a job" and "Latinos bring cockroaches to work from home." (ECF No. 1 at 8.) However, there are no facts alleged in the complaint to link any adverse employment action taken against Plaintiff to his national origin. Plaintiff does not indicate who made the remarks, nor the position of the person or persons who made the remarks. The complaint does not contain factual allegations to allow the Court to reasonably infer that any named defendant discriminated against Plaintiff due to his national origin. Iqbal, 556 U.S. at 678-79.

Plaintiff also alleges disparate treatment stating because he is a male he was subjected to harder work assignments, asked to work on days off, and heavily scrutinized under false pretexts of theft. (ECF No. 1 at 8.) In order to state a claim, Plaintiff must include sufficient factual allegations for the court to reasonably infer that the defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiff's conclusory allegations are insufficient to state a plausible claim that he was discriminated due to his gender.

Plaintiff's complaint does not include sufficient factual allegations for the Court to reasonably infer that the alleged adverse employment actions were motivated by national origin or gender. Plaintiff has failed to state a plausible claim for discrimination in violation of Title VII.

///

**B.     Hostile Work Environment**

Title VII of the Civil Rights Act of 1964, provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1) (2003). "This prohibition encompasses the creation of a hostile work environment, which violates Title VII's guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.' " McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).

To prevail on a harassment claim, a plaintiff must show "(1) that he was subjected to verbal or physical conduct because of his national origin [or sex]; (2) 'that the conduct was unwelcome'; and (3) 'that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.' " Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002) (quoting Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir.1998)).

An abusive working environment is an environment that a reasonable person would find hostile or abusive. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). A workplace is an abusive environment when it is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]' " Id. (citations omitted). Conduct that is not pervasive enough to create an abusive work environment does not violate Title VII. Id.

Plaintiff's complaint contains allegations that because he is a male he was subjected to harder work assignments, asked to work on days off, and heavily scrutinized under false pretexts of theft. (ECF No. 1 at 8.) Plaintiff also alleges that he was subjected to offensive racial comments, including but not limited to, those Latinos should be happy they even had a job and Latinos bring cockroaches to work from home. (Id.) Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII. McGinest, 360 F.3d at 1113.

7

1 Plaintiff's conclusory allegations that derogatory language in the workplace regarding Plaintiff's national origin or that he was subjected to work conditions due to his gender created a hostile work environment are not sufficient for the Court to infer that Plaintiff was harassed based upon his national origin or gender. Iqbal, 556 U.S. at 678. The factual allegations in the complaint are insufficient to show that Plaintiff was subjected to conduct because of his national origin and/or gender that was sufficiently severe and pervasive to alter the conditions of his employment. Plaintiff has failed to state a cognizable hostile work environment claim.

### C. Retaliation

The anti-retaliation provision of Title VII provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case for a claim of retaliation under Title VII, Plaintiff must establish that 1) he engaged in activity to protect his rights under the statute; 2) an adverse employment decision was taken against him; and 3) there was a causal link between the protected activity and the adverse employment decision. McGinest, 360 F.3d at 1125; Villiarimo, 281 F.3d at 1064.

Plaintiff alleges that he reported to human resources and management the use of derogatory remarks based on Plaintiff's national origin. Plaintiff also alleges that he reported the different terms and conditions of employment because of Plaintiff's sex. Complaining about his supervisors' derogatory remarks regarding national origin and the different terms and conditions of employment based on Plaintiff's sex would be protected conduct under the statute. E.E.O.C. v. California Psychiatric Transitions, Inc., 644 F.Supp.2d 1249, 1278 (E.D. Cal. 2009).

As the statutory language quoted above indicates, filing a complaint with the EEOC is a protected activity. See 42 U.S.C. § 2000e–3(a). Making an informal complaint to a supervisor is also a protected activity. See Equal Employment Opportunity Commission v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989).

After he complained, Plaintiff was discharged on June 24, 2014. Adverse employment action is that which "well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination." Burlington Northern and Santa Fe Fy. Co. v. White (Burlington), 548 U.S. 53, 68 (2006). Plaintiff's allegations in the complaint are sufficient to state a claim for retaliation in violation of section 2000e-3(a).

### D. Relief Requested

The only relief Plaintiff seeks in his complaint is removal of a restraining order so he can enter into GVHC property. (ECF No. 1 at 7.) Injunctive and other equitable relief is available under 42 U.S.C. § 2000e–5(g)(1), which provides that:

> [i]f the court finds that the respondent has intentionally engaged in ... an unlawful employment practice ..., the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees …or any other equitable relief as the court deems appropriate.

Title VII prohibits employers from discriminating against their employees based on their employees' race, color, religion, sex, or national origin. If employers intentionally discriminate on a basis prohibited by Title VII, they are liable for compensatory and punitive damages. In addition, the court may enjoin them from discriminating and order them to reinstate employees they have fired, with or without back pay.

The Ninth Circuit has held that Title VII's statutory scheme did not intend to impose individual liability on employees. Miller v. Maxwell's Intern. Inc., 991 F.2d 583, 587 (9th Cir. 1993). Liberally construed, Plaintiff's complaint states a claim against Defendants Weber, Buda, Bennett, Noriega, Penner, Perez, and Leyva in their official capacity for injunctive relief.

However, Plaintiff is not seeking reinstatement or injunctive relief related to his employment with GHC. Based on the allegations in the complaint, it appears that the state court has issued a restraining order against Plaintiff which does not allow Plaintiff to go to GVHC. Plaintiff seeks for this Court to interfere with that restraining order. It is unclear from the allegations in the complaint the basis of the restraining order, however, the Court notes that based on the complaint allegations, Plaintiff was charged with a misdemeanor in state court.

It appears that two abstention principles articulated by the United States Supreme Court may apply to this case.

The Younger doctrine precludes a federal court's intervention in ongoing state

1  proceedings. Younger v. Harris, 401 U.S. 37 (1971). Younger abstention is required when: (1)
2  state proceedings, judicial in nature, are pending; (2) the state proceedings involve important
3  state interests; and (3) the state proceedings afford adequate opportunity to raise the
4  constitutional issue. Middlesex County Ethics Comm. V. Garden State Bar Ass'n, 457 U.S. 423,
5  432 (1982); Dubinka v. Judges of the Superior Court, 23 F.3d 218, 223 (9th Cir. 1994). The
6  rationale of Younger applies throughout the appellate proceedings, requiring that state appellate
7  review of a state court judgment be exhausted before federal court intervention is permitted.
8  Dubinka, 23 F.3d at 223 (even if criminal trials were completed at time of abstention decision,
9  state court proceedings are still considered pending).

10 Once a state court proceeding has concluded, the Rooker–Feldman abstention doctrine
11 applies when the relief requested in the federal court would effectively reverse a state court
12 decision or void its ruling. The application of the Rooker–Feldman doctrine is necessarily
13 limited to "cases brought by state-court losers complaining of injuries caused by state-court
14 judgments rendered before the district court proceedings commenced and inviting district court
15 review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544
16 U.S. 280, 284 (2005). However, the Rooker-Feldman doctrine, encompasses claims that were
17 not only actually litigated, but also those that are "inextricably intertwined" with the adjudication
18 by a state court. Id. (citations omitted). "[I]f a plaintiff's claim in federal court is inextricably
19 intertwined with a previous state court adjudication, the district court lacks jurisdiction over the
20 claim even if it was not raised in the state court." Id.

21 In the instant action, it is not clear whether Plaintiff is seeking a remedy that may have an
22 effect on ongoing state criminal proceedings against him. Plaintiff alleges that the affidavits that
23 were used against him to grant the injunction were in conflict with the Merced Police
24 Department incident report. (ECF No. 1 at 11.) If the restraining order was issued in an ongoing
25 criminal proceeding, Plaintiff is essentially asking this court to step into the middle of state court
26 criminal proceedings. If there are ongoing state criminal proceedings against Plaintiff, they are
27 judicial in nature, and the proceedings involve the important state interest of protecting the
28 public. Moreover, the state court proceedings afford Plaintiff an adequate opportunity to

challenge the restraining order. Plaintiff is challenging the state court issuance of a restraining order and seeks for this court to intervene in the state court proceedings. The court declines to do so and will abstain under Younger. Accordingly, the Court finds that abstention is proper with respect to any ongoing criminal action pending against Plaintiff in state court.

Even if there is not an ongoing criminal state court case against Plaintiff, it appears that the restraining order was entered by a state court. The relief Plaintiff seeks would result in this Court overturning the state court decision to issue a restraining order against Plaintiff. This Court cannot serve as an appellate court to review state court proceedings, so therefore, Plaintiff may not seek the relief that he is requesting in his complaint. The state court proceedings and any appellate process in state court afford Plaintiff an adequate opportunity to challenge the restraining order.

Rule 8 provides that a complaint must contain a demand for the relief sought. Fed. R. Civ. P. 8(c)(3). The only relief sought by Plaintiff is unavailable in this action. Accordingly, Plaintiff's claims shall be dismissed with leave to amend for an appropriate request for relief.

### E. Leave to Amend

Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Id.

As Plaintiff is proceeding pro se in this action, the Court shall provide him with an opportunity to correct the deficiencies of his claims.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint fails to state a cognizable claim for relief under federal law. The Court will provide Plaintiff with the opportunity to file a first amended complaint curing the deficiencies identified by the Court in this order. Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012).

If Plaintiff decides to file a first amended complaint, he is advised that he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff's first amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678-79. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012); Valdez-Lopez v. Chertoff, 656 F.3d 851, 857 (9th Cir. 2011), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220. .

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint, filed October 26, 2016, is DISMISSED with leave to amend;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order, and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **December 20, 2016**

UNITED STATES MAGISTRATE JUDGE

12